Johnson, J.
We think the Court erred in its charges to the jury as to the relative duties and obligations of the-plaintiff" and defendant toward each other at the time the injury was caused.
. The question of contributory negligence by the plaintiff' was presented; that is, whether he had so directly contributed to his own injury, as to bar a recovery, and the effect of the charges we shall notice, was, practically, to take from the jury its determination.
We will notice those charges given and refused which relate to this point.
1. The court charged; “The plaintiff claims that he- *229 went on the defendant’s cars at Coshocton to get his change. This he had a right to do, and if the conductor neglected to stop the train, or so far check its motion as to afford the plaintiff an opportunity of getting off with safety, he, the plaintiff, would have a right to remain on the train. Dut if the conductor in charge of the train ordered or directed him to jump off as quick as he could, and the conductor neither stopped the train, cheeked its speed, ndr attempted to stop or check it, and the plaintiff, in pursuance ¡and in obedience of such order, jumped off while the train was moving at the rate of four miles an hour, and was injured, the defendant would be liable ; provided you find that the plaintiff, in jumping off the train, exercised ordinary care and prudence to avoid injury.” To which charge defendants excepted.
2. Also the following : “ That if the jury shall find that .•at the time the plaintiff received the injury complained of in the petition, that the defendant was a railrpad company, ■engaged in carrying freight and passengers on their railway from Newark to Steubenville, in the State of Ohio, and were running trains called local freight trains between 'Newark and Dennison, in the State of Ohio, which trains were used for carrying freight and passengers, and that the plaintiff, with the consent of the conductor of one of said trains, got on board of said train at Coal Port or Franklin station, to be carried on said train from said station to Cosh■octon, for a reward to be paid by said plaintiff to said company, then said plaintiff was a passenger, and entitled to all the rights of passengers on railway trains; and if the jury ¡shall further find that, after said plaintiff had so got on said train, and said train had started eastwardly on its way to Coshocton, the said conductor called upon said plaintiff, and demanded his fare, and informed plaintiff that the amount ■of said fare was twenty-five cents, and that plaintiff had only ten cents in change, but also had a,five dollar bill, and informed said conductor that he only had ten cents in change, and had a five dollar bill, and offered the ten cents to the conductor, and promised to pay the balance when *230 he arrived at Coshocton ; and that said conductor refused to take the ten cents, but informed plaintiff' he would take said five dollar bill, and pay the plaintiff' his change when the train arrived at Coshocton, and took and kept the five-dollar bill; and if the jury shall further find that said'conductor retained said money, and the train arrived at Coshocton, and the plaintiff' got off' the train and waited at the-station for his change, and that said conductor failed and neglected to give plaintiff' his change, but started said train, in motion .on its eastward journey from the town of Coshocton, without giving the plaintiff' his change, that then the plaintiff' bad a right to go on board of said train and demand said change; and if they further find that plaintiff" did go on board of said train, while the same was in motion, for the purpose of so demanding said change, and did demand it, and the said conductor handed him his five dollar bill, and told him to pay the twenty-five cents the next time he got on said train, and to get off’ as quick as he-could, without offering or attempting to stop said train, or-to slacken its speed, to enable plaintiff to get off, and in-pursuance of said direction plaintiff' did jump off of said train while the same was in motion, and running at a rate of speed of only four or five miles an hour, and received: 'the injury complained of in the petition ; and if they find. that in so jumping off said train the plaintiff exercised such care as a reasonably prudent man, under the same circumstances, would, have done, then the defendant is liable, and the plaintiff is entitled to recover.” To which charge defendants excepted.
That is to say : 1. If the conductor “ ordered or directed the plaintiff to jump while the train was in motion, neither stopx>ing nor attempting to check it up, the defendant was, as matter of law, liable for the injury, provided ordinary care and prudence was used by the plaintiff to avoid injury while jumping off. 2. If the conductor told plaintiff to get off as quick as he could, without stopping or attempting to-stop the train, and in- pursuance of said direction plaintiff-jumped oft', while the train was in motion and running at the speed of four or five miles an hour, the plaintiff is en *231 titled to recover, if the jury find “ that in so jumping off said train the plaintiff exercised such care as a reasonably prudent man, under the same circumstances, would have done.”
The charges involve the same principle, and are liable to the same objections.
They assume that the liability of the defendant for the-injury was absolutely fixed, provided the plaintiff jumped with proper prudence and skill, however imprudent the act may have been.
They take from the jury as a fact, the question as to whether the plaintiff was guilty of contributory negligence in the transaction, provided the plaintiff was ordered or told to get off, and provided he jumped as a prudent and careful man would under the same circumstances.
They charge to the defendant’s account whatever imprudences or faults the plaintiff may have been guilty of in getting on the train while in motion, and thus creating the emergency out of which the injury arose, or in getting off again, without any compulsion, or without requesting the conductor to check or stop the train, provided the mode and manner of jumping off was such as a'careful and prudent, man would adopt.
To entitle the plaintiff to recover, he must show :
1. That the defendant’s negligence caused or directly contributed to the injury.
2. That the plaintiff himself was without fault directly contributing to, or causing the injury.
Eor the purposes of this discussion, we may assume that a case was made showing that defendant was at fault in not stopping or checking the train to let the plaintiff off', and that this fault directly contributed to the injury; though we are inclined to the opinion that, under the special circumstances of this case, that was a question of fact for the jury, rather than of law for the court, as the charge assumes, when the jury are told that upon these facts the plaintiff was entitled to recover, if he had jumped with proper care and skill.
The chief objection to these charges which we shall *232 notice is, that they take from the jury all questions of fault or negligence of the plaintiff in getting on and off the train while it was in motion, provided he exercised proper care and prudence in the manner of getting off, if he was directed or told to get off.
The plaintiff’s journey had ended. He was no longer a passenger “in the custody or under the control of the defendant, as a carrier.” Their relations to each other were •only such as grew out of the failure of the conductor to return him his change. Finding that the train was starting, .and that the conductor was going without fulfilling his promise, the plaintiff’immediately determined to board the moving train, to obtain his money, and get off again, as may well be supposed, rather than await the return of the ■conductor, or suffer the delay and inconvenience of obtaining his money in some other mode.
We may assume that the defendant was liable for this omission of the conductor to return the plaintiff his change, and that the plaintiff might legally and rightfully board •the moving train to obtain it; yet the fact remains that he voluntarily did so, and thereby cheated the emergency which then arose. We may further assume that this emergency arose primarily from the failure of the conductor to return the change, yet that failure did not relieve the plaintiff from whatever fault he was guilty of in boarding the moving train, and thus becoming the proximate ■cause of the emergency leading to the injury.
Krouse elected to make this hazardous effort to regain his money, rather than resort to other methods, and suffer the inconvenience of doing without it. We agree he might lawfully do so, and that in so doing the company was not relieved of its duty of care and prudence toward him, while so employed, not as a passenger, but as one having lawful business to transact with the conductor. We agree, further, that upon the evidence in this case, it was the duty of the defendant to have slackened or stopped the train to let the plaintiff off. Our objection to this charge is, that the court assumed, as matter of law, that however much *233 "the plaintiff was to blame in attempting to get off the train moving at this rate of speed, and at a place not intended to be used for that purpose, without an effort to have the train stopped, he was entitled to recover, if he got off with proper care and skill.
The jury were told, if the conductor had told him to get off the train while in motion, without attempting to stop it, that direction relieved the plaintiff from all blame or imprudence in undertaking this hazardous leap, if he performed it in a skillful manner, although the plaintiff admitted, in his evidence, he was under no compulsion to do so.
Whether the plaintiff' was guilty of contributory negligence, was a question of fact for the jury, under proper instructions from the court.
The plaintiff had helped to create the emergency that caused him to attempt to jump from the train. The court assumed that this attempt was dangerous, and imputed to the defendant all the liability for the act of jumping, and instructed the jury to give the plaintiff a verdict, if “ in so jumping,” he did it in a proper manner, thus taking from the jury all inquiry as to contributory negligeuceof plaintiff, except as to the manner of performing the leap.
Whether the plaintiff was guilty of such negligence .■should have been submitted to the jury, without the qualification embraced in these charges. If the conductor had -ordered or directed the plaintiff to get off the moving train, that was a circumstance proper to go to the jury, in determining whether the plaintiff was justified in making the .attempt. It did not, as a matter of law, relieve the plaintiff'unconditionally and absolutely from all blame, or transfer it to the defendant. It was for the jury to say, under all the circumstances of the case, whether it was imprudent in the plaintiff to make the attempt, and in doing so, this remark of the conductor and its influence on the action of the plaintiff should have been considered.
We have been cited to a number of cases where it has ¡been held, that the order or direction of the officers or em *234 ployes of the railroad, made to passengers, excuse them from the consequences of attempting to comply with such orders or directions. Among these are Filer v. N. Y. Cent. R. R. Co., 49 N. Y. 47; Delamatyr et al. v. Milwaukee, etc. R. R. Co., 24 Wis. 578, 586-7; Filer v. James, 59 N. Y. 351; Warren v. Fitchburg R. R. Co., 8 Allen, 227; Lambeth, Adm’r, v. North Carolina R. R. Co, 66 N. C. 494; Sweeny v. Old Colony, etc. R. R. Co., 10 Allen, 368; Gaynor v. Same, 100 Mass. 208; Mclntire v. N. Y. Cen. R. R. Co., 37 N. Y. 288-9, 293-4.
These cases rest upon the ground that passengers have-a right to assume that the employes of a railroad know when an act is safe and when it is not, and that they would not direct a passenger to do it unless it was safe, and that the road, by such orders or directions of its employes, has-involved the plaintiff in the act, whether it be that of leaping from the ears while in motion, or any other act by which he is injured. And they show a variety of other-acts, beside directions in words- to leap from the train, which, when committed by their employes, are held to have-involved the plaintiff in the act which resulted in his injury, and that consequently the road is liable.
In Filer v. N. Y. Cent. R. R., 49 N. Y. 47, it is said,, “"When a passenger upon a railroad, by the wrongful act of the company, is to be put to an election between leaving the ears while they are moving slowly, or submitting to-the inconvenience of being carried by the station where-he desired to stop, the company is liable for the consequences of the choice, provided it is not exercised wantonly or unreasonably.”
In that case the injury- occurred in consequence of a passenger attempting to pass from one car to anqther while in motion, in compliance with directions of an employe. The defendant asked the court below to charge the jury,, that as a matter of law, the injured party was gnilty of contributory negligence in making the attempt to pass, not•withstanding the directions.
The court say: “There is much evidence tending to- *235 show, that in moving from one car to the other, the deceased was but obeying the directions of the employes of the defendant, and it was eminently proper for the judge to have left to the jury the question, whether under the circumstances disclosed, the deceased was guilty of any negligence in complying or attempting to comply with those-directions.”
This is an authority directly in support of the conclusions we have reached.
Delamatyr v. The Milwaukee, etc. R. R., 24 Wis. 578, was the case of a passenger attempting to leave the car at a station, and was injured in so doing.
It is said: “ Where a railroad company by its negligence-compels a passenger to chose between incurring some risk in leaving the train, and being exposed to other inconveniences to which it has no right to expose him, and he is injured in getting off, under circumstances which would not prevent a person of ■ ordinary prudence from doing so, the company is liable.”
After stating this rule of law, the court in noticing the point made by defendant, that the plaintiff was guilty of contributory negligence, say: “ That it was purely a question for the jury to find, in view of all - the facts, whether Mrs. Delamatyr was guilty of .any negligence in descending the steps or jumping from the cars in the manner she did. As a matter of law, the court surely can not say that she was careless or reckless in her conduct.” After referring-to the testimony, that she was directed to jump off' it is said: “ Thus, it will be seen that the court left to the jury the question, whether upon the facts disclosed, Mrs. Delamatyr was guilty of negligence; and we think that, preeminently, that was a question for the jury to decide, and not one for the court.”
In McIntire v. N. Y. Cent. R. R., 37 N. Y. 288, the passenger had attempted to pass from one car to another,, while the train was in motion in obedience to directions of an employe of the company in order to obtain a seat, and was killed.
*236 The defendant asked the court to hold, as a matter of law, that the plaintiff was guilty of such contributory negligence as barred a recovery. This the court refused to do, holding that being bound to furnish the passenger a seat, and having directed her to go forward on a moving train to obtain it, the company, and not the passenger assumed the hazard of the undertaking.
Filer v. N. Y. Cent. R. R., 49 N. Y. 47, was a case of a passenger attempting to alight at a station, while the train ■was still moving in obedience to directions by a brakeman.
The court of appeals, in disposing of the case, say (pages •50, 51 and 52: “ The fact is undisputed that the plaintiff received the injury while attempting to get off the cars while they were in motion, making very slow progress, and the jury have found that she was directed by the brakeman on ■ the cars to get off,\ and was told by him that they would not •stop, or move more slowly to enable her to do so. That it was culpable negligence on the part of the defendant to in- ■ duce or permit the plaintiff to leave the train while in motion, and a gross disregard of the duty it owed her not to stop the train entirely, and give her ample time to pass off with her baggage, is not disputed. Notwithstanding this, if the plaintiff did not exercise ordinary care, and might with ordinary care and prudence have avoided the injury, she is precluded from recovering.”
“ The degree of negligence of which the parties are respectively guilty, or whether the fault of the defendant was a breach of contract, or the mere omission of some duty resting upon it as a carrier of passengers, is not material.”
“ The plaintiff’s negligence may have been slight, and ■that of the defendant what is ordinarily termed gross, but-if the plaintiff’s fault directly and proximately contributed to the injury, she can not recover. . . .
“ That there was more hazard in leaving a car while in motion, although moving ever so slowly, than when it is at rest, is self-evident. But whether it is imprudent and careless do make the attempt depends upon circumstances; and when a ■.party by the wrongful act .of another, has been placed in *237 circumstances calling for an election -between leaving the-cars or submitting to an inconvenience and a further-wrong, it is a proper question for the jury whether it toas a prudent and ordinarily careful act, or whether it was a rash and reckless exposure of the person to peril and hazard.”
This case came again before the court, in 59 N. Y. 351,. upon the charge of the court below, that it was immaterial who gave the direction, whether it was the brakeman, or a - person not connected with the train, and left it to the jury to say whether it was prudent for her acting under the advice • given by anybody to alight from the train.
It was held this was error, for the obvious reason, that the employes of the train are in the line of their duty in.assisting passengers on and off the train, and in directing them in procuring seats, and that when they give directions, passengers will naturally assume that they know it is entirely safe, or the direction would not be given, which would not be the case if the advice or direction comes-from those not connected with the train.- It is said that passengers rightfully assume that these persons are familiar • with the movements of the train, and know whether the • passenger can comply with the directions with safety.
The point there decided, simply was that directions given-by employes stood on a different ground as affecting contributory negligence, than those given by strangers, and", that it was error to charge the jury there was no material difference. The language of the court, in 49 N. Y, which we have quoted and emphasized, to the effect that it is a. proper question for the jury, whether in case of such directions by a brakeman, it was a prudent and careful or a. rash and reckless exposure of the person to peril and hazard, was left unqualified as the law of the case.
Warren v. Fitchburgh R. R. Co., 8 Allen, 227, cited by defendant, instead of being an authority for him is strongly the other way.
In that ease, a person having purchased his ticket, was. directed by the station agent to ¡¡.cross over the track, to: *238 take lais place on the train, and while doing so in company with the agent was struck by a train and injured.
The court says: “It was shown that the plaintiff had •purchased his ticket . . and was waiting in the passenger station for the arrival of the train . . that the station agent said to him, ‘ The train is coming; we will ■ cross over,’ upon receiving this information and direction the plaintiff’ followed the station agent, from the room across toward the train, . . . and was hurt by the moving train.”
“ Whether, in this condition of things, in his anxiety ■seasonably to reach the train, which would stop but for a moment, the plaintiff', at a station with which he was not •familiar, would have been likely to be thrown off' his guard, by the direction to ctoss over given without any caution or ■ qualification; whether he might naturally, and without subjecting himself to the imputation of want of care, have considered himself under the charge of the defendant’s agent, with an assurance that it was safe and proper to go directly to .the cars, were questions for the jury, and not for the court.”
So in Sweeny v. Old Colony R. R. Co., 10 Allen, 358, when a person was injured while crossing a railroad track upon receiving a signal from the flagman that it was safe; it was held, that this fact, with others warranted the jury in finding for the plaintiff'. It was said: “The question whether the plaintiff' was so induced was distinctly submitted to the jury by the court. . . . Certainly the evidence as reported well warranted the finding of the jury on this point.”
In Gaynhr v. Same, 100 Mass. 208, it was also held, that it was for the jury to determine whether the plaintiff was guilty of contributory negligence, although the arrangement and use of the premises, were such as to invite the plaintiff to cross the. track, iu attempting to do which' he was injured.
The Penn. P. P. Co. v. Kilgour, 32 Penn. 292, was a case •of a female passenger, with three young children, attempting *239 to alight at a station, and was injured by the cars starting: it was held, that the question of concurrent negligence was to be determined by the particular circumstances of the case. . 1
It is unnecessary to notice further the authorities. The cases relied on relate chiefly to passengers and carriers, and to the effect of orders, directions, and instructions given to the former by the employes of the latter, in the performance of their duty as carriers, either as to the position and conduct of the passengers on the train, or as to getting on or off at the usual places or stations. There is a material difference between such orders, directions, advice, and instructions, and while in performance of the carrier’s duty, and those given by such employes not in performance of .such duty. If while a train was at full speed, the conductor should direct a passenger to jump out at a point extremely hazardous, between stations, it would hardly excuse the passenger from the legal consequences of contributory negligence, where he acted voluntarily. So when, as in this case, the relation of passenger and carrier did not exist, and the emergency is one for which the plaintiff was at least equally at fault with the defendant, it was eminently proper that questions of contributory negligence of the plaintiff as to the propriety and prudence of making the effort to get off, as well as to the care and .skill exercised in doing so, should have been left to the jury. If the conductor advised or directed him to get off' the train while in motion, that was a circumstance to be considered by the jury upon the issue. Its effect on the plaintiff’s mind and conduct was for them to determine under all the circumstances.
It was the province of the jury to determine both the nature and effect of this remark of the conductor; whether it was intended and understood as an order to leave the train, or was by way of advice, or as a suggestion for the plaintiff’s benefit, and in furtherance of what the plaintiff intended to do ; and also whether such remark influenced ¡the action of plaintiff and caused him to act differently *240 from what he otherwise would have done. Wharton on Neg., see. 38; Johnson v. R. R. Co., 7 Penn. St. 357; Ill. Cent. R. R. Co. v. Able, 59 Ill. 181.
This error is not cured by the general instructions. Every charge should be predicated on the issues and facts of the-case. A specific charge, based on particular facts, which if followed by the jury causes an erroneous verdict, is not cured by correct general charges applicable to cases of this-class as well as the case at bar.

Judgment reversed and cause remanded.