ELI F. DOUGHERTY

*v.*

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY.

NEGLIGENCE — *contributory.* If a railway company fails to stop its train at a station where it has contracted to carry and leave a passenger, it furnishes no excuse for the passenger's conduct in leaping from the train some three miles beyond, while the train is running at the rate of fifteen miles an hour, and if he does so leap from the train, and is injured thereby, he can not recover of the company for such injury. In such case he should remain on the train, and sue for the damages sustained by him in being carried beyond the proper station.

APPEAL from the Circuit Court of Warren County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. STEWART & PHELPS, for the appellant.

Mr. J. M. WALKER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This action was instituted to recover damages for personal injuries.

Appellant, on July 3, 1874, at Mt. Pleasant, Iowa, procured a ticket for Cameron, Illinois, and took passage on a regular passenger train for that place. At Burlington he left the passenger train, and for some reason took a freight train which had a caboose car attached. Appellant, as appears, desired to go to the house of a friend, who resided about three miles east of Cameron, near the track of the railroad. Between Kirkwood and Monmouth he attempted to make an arrangement with the conductor to have the train stop on a curve in the road near the house of his friend, three miles east of Cameron, but was informed by the conductor it was against the rules of the company. After some conversation on the subject, the conductor told appellant to give the brakeman a quarter of a dollar and he would have the engineer stop. Appellant informed the brakeman what the conductor had said, and gave him the money, who said he " would see about it." Before reaching Cameron, however, appellant was notified, both by the conductor and brakeman, that the train would not stop at the curve, and the money was tendered back to him. There is a conflict in the evidence in regard to whether the train actually stopped at Cameron. Some of the witnesses say it did, while others testify the other way. But be that as it may, it is clear the train either stopped or run so slow that passengers could get off or on the train, and one passenger left the train at this station. We do not, however, regard this disputed question of fact as material, as appellant did not desire to get off the train at Cameron, and made no attempt to do so. The whole evidence points to the conclusion that he expected to leave the train at the curve. When the train reached the curve it was running at

the rate of from fifteen to eighteen miles an hour. Those in charge of the train did neither stop nor slacken its speed. Appellant testified the conductor told him he had better get off, but this is denied by the conductor; and upon this point there is a direct and positive conflict in the evidence, and the verdict of the jury against appellant must be held conclusive. He did, however, jump from the train, and was injured.

It is first contended by appellant that it was gross negligence on the part of the company to fail to stop the train a sufficient time to allow him to get off at Cameron. Suppose that be true, such fact afforded no excuse for the appellant to leap from the train three miles from the station, when it was running at the rate of fifteen miles an hour. If he was carried beyond Cameron for the reason the train did not stop, it was his plain duty to remain on the train until such time as he could leave with safety, and then bring an action against the company for such damages as he sustained on account of the failure of the railroad company to stop its train at the station where it had contracted to leave him. The fact that the company failed to stop at Cameron, if it be a fact, is no excuse for the conduct of appellant in leaping from the train. And where an injury has been received by the reckless act of a passenger in an attempt to leave the train when in motion, no recovery can be had although the company may have disregarded a duty imposed by law in failing to stop at the station. Shearm. & Redf. on Neg. 341; *Jeffersonville R. R. Co.* v. *Swift*, 22 Ind. 450; *Pennsylvania R. R. Co.* v. *Chappel*, 23 Pa. St. 147.

If we are correct in this view of the question, it follows appellant can not complain of the modification of his first instruction, as it was more favorable to him than the law would justify, even after the court's modification.

It is also contended the court erred in giving appellee's twelfth instruction, as follows:

"The jury are instructed that if they believe, from the

evidence in this case, that the proximate or immediate cause of the injuries that it appears, from the evidence in this case, the plaintiff sustained on the 3d of July, 1874, was his jumping from the defendant's train while it was in motion, then the jury are instructed that he can not recover in this case, if they believe, from the evidence, that he, by the exercise of ordinary care and prudence, could have avoided alighting from the train and receiving the injuries complained of."

The object of the instruction doubtless was to meet the position of appellant, assumed before the jury, that the failure of the company to stop the train at Cameron was gross negligence, and the cause which led to the injury sustained. For this purpose the instruction may have been proper. It could not, in any event, mislead the jury. Had this been an action to recover damages because the company had carried a passenger beyond the station where he had paid the company to carry him, then the fact of the company's failure to stop at the station might be regarded an important element in the case ; but in this case we do not regard it of controlling importance. Under the evidence, as given to the jury, we perceive no ground upon which appellant could recover. The judgment of the circuit court will, therefore, be affirmed.

*Judgment affirmed.*