WALLER v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1.  **Railroads**: NEGLIGENCE: EVIDENCE:  In an action against a railroad company for the negligent killing of a passenger on its train, the remarks of the brakeman while assisting her to alight from the train to "Come on, hurry up," are admissible in evidence as part of the *res gestæ* and as tending to rebut the defence of contributory negligence set up in the answer.

2.  **Carriers, Duty Toward Passengers.**   A carrier is bound to exercise the strictest vigilance in conveying a passenger to his destination and in setting him down safely.

3.  **Practice**: NEGLIGENCE ; WHEN QUESTION FOR JURY.   Whether the attempt of a passenger to step from the cars when the train is in motion is, under the circumstances of a particular case, such negligence as will relieve the railroad company from liability for injury occasioned thereby is a question of fact for the jury.

4.  **Practice in Supreme Court**: INSTRUCTIONS: EXCEPTIONS.  The

Supreme Court will not review an instruction where the record fails to show that the action of the court in giving it was excepted to at the time.

*Appeal from Buchanan Circuit Court.*—HON. W. H. SHERMAN, Judge.

AFFIRMED.

*Geo. W. Easly* for appellant.

(1) The demurrer to the evidence should have been sustained. *Price v. Railroad Co.*, 72 Mo. 414 ; Pierce on Railroads, p. 317, note 2 ; *Burrows v. Railway Co.*, 63 N. Y. 558 ; *Doss v. Railway Co.*, 59 Mo. 37 is not good law and is unsupported by reason or authority ; the cases cited therein do not support it. It is negligence to get off when the train is in motion, whether fast or slow, unless there is that in the facts of the case which induces the belief on the part of the passenger that it is not dangerous. Hutch. on Car., p. 507, § 643 ; *Filer case*, 49 N. Y. 47. (2) The first instruction given on behalf of plaintiff should have been refused. Plaintiff's evidence, as shown in paragraph one of his brief, disproved the facts therein proposed to be submitted. (3) The second instruction given for plaintiff is erroneous, *first*, in defining the degree of care required of defendant. Defendant was only required to exercise such care, diligence, skill and foresight as careful and prudent men are reasonably expected to exercise in the particular business, under like circumstances of difficulty and danger. *Sawyer v. Railroad Co.*, 37 Mo. 260. "The rule does not require that the highest degree of practicable care and diligence should be adopted that is consistent with the mode of transportation adopted." Redfield on Car., p. 265, § 347. *Second*, The second instruction was also erroneous in requiring that defendant set the deceased down safely. *Third*, It was erroneous in declaring that deceased had a right to get off if the circumstances then and there ap-

parent to an ordinarily prudent passenger did not forbid her making the attempt. This is not the law. Hutch. on Car., p. 507, § 643, note 1. (4) The instruction given by the court in lieu of the second asked by defendant is erroneous. *First,* That it holds as a matter of law that the request or direction of the brakeman to the deceased to alight excused the deceased from contributory negligence. Pierce on Railroads, p. 329, note 5; *Price v. Railroad Co.,* 72 Mo. 419; *Filer v. Railroad Co.,* 49 N. Y. 47; *Sykes v. Railroad Co.,* 11 Cen. L. Journal 337. *Second,* It puts the inquiry of contributory negligence wholly on the speed of the train. Thomp. on Car. of Pas., p. 227. *Third,* It is in conflict with the pleadings of the plaintiff. (5) The evidence as to the invitation or direction of the brakeman to Mrs. Waller to alight should have been excluded on defendant's objection. It was an issue not made by the pleadings. *Buffington v. R. R. Co.,* 64 Mo. 246; *Waldhier v. R. R. Co.,* 71 Mo. 514; *Price v. R. R. Co.,* 72 Mo. 414; *Edens v. R. R. Co.,* 72 Mo. 212; *Bullene v. Smith,* 73 Mo. 151; *Ely v. R. R. Co.,* 77 Mo. 34.

*Vinton Pike* for respondent.

(1) Plaintiff's evidence was to the effect that the train did not stop a sufficient length of time to enable deceased, by use of reasonable expedition, to get off before it was again started, and that it was either started while she was in the act of alighting, or if it started before she attempted to alight, that she stepped from the train while its motion was almost imperceptible and at the invitation of defendant's brakeman. *Straus v. Railroad Co.,* 75 Mo. 190. (2) Whether it is negligence to get off a moving car not yet beyond the platform, whose motion is so slight as to be almost imperceptible, is a question for the jury. *Doss case,* 59 Mo. 37; *Nelson case,* 68 Mo. 59; *Price case,* 72 Mo. 418; *Filer v. Railroad Co.,* 49 N. Y. 47; *Loyd v. Railroad Co.,* 53 Mo. 509.

(3) This case is almost identical with the *Filer case*, *supra*. The second instruction given for plaintiff is not erroneous. *Kelly v. Railroad Co.*, 70 Mo. 609; Wood's Brown on Car., §§ 490, 496; Hutch. on Car., §§ 500, 501. (4) The instruction given by the court in lieu of the second asked by the defendant was not complained of in the court below and cannot be alleged as error here. (5) The evidence of the statements of the brakeman as testified to by witness Bledsoe, was properly admitted. It was a part of the *res gestæ* and was in rebuttal of any evidence tending to show contributory negligence on the part of Mrs. Waller.

NORTON, J.—This action was commenced by plaintiff to recover, as damages, the statutory penalty, for the death of his wife, a passenger on one of defendant's trains, alleged to have been occasioned by defendant's negligence.

The petition substantially alleges as follows:

1. The incorporation of defendant and its operation of a railroad. 2. The creation of the relation of carrier and passenger between plaintiff's wife and defendant, and defendant's duty arising therefrom, to transport her from St. Joseph to Easton and to stop the train "a sufficient length of time for her to pass therefrom with safety." 3. And yet the plaintiff says that the agents, servants and workmen of defendant, in charge of the aforesaid train, wholly disregarding their duty in that behalf, did not stop at said station or depot a sufficient length of time for said Mary Waller to pass from said train, but carelessly and negligently started said train while the said Mary Waller was passing therefrom, and the said Mary Waller without any negligence on her part in attempting to pass from said train to the platform as aforesaid, was thrown suddenly and violently down between the car and the platform and under the train aforesaid, and was run over, crushed, wounded and lacerated by the car steps and carriage wheels, and otherwise so

injured that the said Mary Waller thereafter in conse-
quence and by reason of the said injuries, and on the
18th day of July, 1879, died.    4. That deceased was the
wife of plaintiff, and that she died from the injuries re-
ceived at Easton within six months next before the filing
of the petition.

The answer was a general denial with a plea of con-
tributory negligence.    On the trial plaintiff obtained
judgment, from which the defendant has appealed.

The first action of the court excepted to, as shown
by the record, was the reception, over defendant's objec-
tion, of the following evidence of witness Bledsoe:

"When Mrs. Waller got to the car door, the brake-
man, Ben Lynch, was with her, and as they came out of
the car door he said to her: 'Come on; hurry up';
when I first saw the brakeman he was coming out of the
car door with Mrs. Waller; the train was then in motion;
he said, 'Come on; hurry up'; just as he came out of
the car door, he being ahead of her; when I next saw
him he was on the depot platform and she was on the
platform of the car, he again said, 'hurry up,' and
reached out his hand for her."

We are of the opinion that this evidence was properly
received as being part of the *res gestæ*, and as tending to
rebut the defence of contributory negligence set up in
the answer, inasmuch as it must have had a tendency to
induce the belief in the mind of Mrs. Waller that she
might safely alight from the train, while moving at its
then rate of speed.

No other objection was made to the reception or re-
jection of evidence, and without incorporating in this
opinion what was said by the witnesses, it will be sufficient
to say of it, that plaintiff's evidence tended to establish
the case made in the petition, and that while plaintiff
was attempting to pass from said train to the depot plat-
form, the train started by the negligent act of defendant,
without having given a reasonable time for Mrs. Waller
to alight, whereby the accident resulting in her death oc-

curred.   On the other hand, all the evidence of defendant tended to show that the train stopped at Easton a sufficient length of time to allow deceased to alight in safety, and all of it except that of witness, Lynch, tended to show that Mrs. Waller did not leave her seat in the car till after the train started.   Witness, Lynch, who was the brakeman, testified on his cross-examination that "just as the train started I turned and stepped on the steps of the car and as I did so met Mrs. Waller coming down the steps."

On this state of the evidence the court instructed for plaintiff as follows:   "The court instructs the jury that it was the duty of the defendant, as a common carrier of passengers, by its agents and employes, to have stopped the passenger cars at the platform, at the depot, for a sufficient length of time to have made it safe for ingress and egress of passengers into and from the same, and to enable them to get on and off with safety.   And if the jury believe from the evidence that said Mary Waller was the wife of the plaintiff, that at the time stated in the petition she was on defendant's train as a passenger therein to be conveyed to defendant's station at Easton, and that when said cars arrived at the Easton station said Mary Waller attempted without negligence on her part in so doing, as defined in the instructions, to pass from said train to the depot platform, and that while attempting so to do said train and cars were started by the negligent act or careless conduct of those in charge of the train, without having given a reasonably sufficient length of time for said Mary Waller to get off said car, and that in consequence of such negligence of defendant's employes in starting said train, the said Mary Waller, without negligence on her part directly contributing thereto, was injured, and that her death was occasioned or caused by injuries so received, they will find for plaintiff and assess his damages in the sum of five thousand ($5,000) dollars.

"The defendant's agents and servants to whom the

management of the railroad in proof was intrusted, were bound to exercise the strictest vigilance in carrying the deceased as a passenger to Easton, her destination, and to then set her down safely ; and for want of care and foresight in stopping and starting the train at that station, and in giving her a reasonably sufficient time to alight, if any such want of care or foresight shall have been proved by the evidence, defendant is responsible for the direct and immediate injury resulting therefrom. But the defendant railway company was not an insurer of Mrs. Waller against any dangers to which she as a passenger on defendant's railway train might expose herself by her own imprudence or carelessness. If she as a passenger had been carried by her stopping place by any negligence of defendant's servants or agents, she could have recovered compensation for the inconvenience, loss of time and expenses. But if the train on which she was a passenger stopped a reasonably sufficient time to allow her to alight on the Easton passenger platform safely, and without danger, and she did not alight while the train was thus stopping, but afterwards, when said train had started from Easton station the deceased stepped upon the platform of the passenger car and attempted to alight at a time and under circumstances there and then apparent to an ordinarily prudent passenger, when ordinary care and prudence would forbid her making the attempt, and in thus attempting to step from the train the deceased was injured, then plaintiff cannot recover."

The following instructions were asked by the defendant, of which the first and third were given, and the others refused : 1. If the jury believe from the evidence that defendant's train stopped at the depot platform in Easton for a time sufficient to enable Mrs. Waller, the deceased, to leave the car and pass to the depot platform with safety, they must find for the defendant. 2. If the jury believe from the evidence that the train made but a momentary stop at the town of Easton, and, that under

such circumstances and while the train was in motion, deceased left the car and attempted to pass to the depot platform, they will find for defendant, unless they further believe that she so acted at the request or by direction of defendant's brakeman. 3. If the jury believe from the evidence that the deceased was guilty of any recklessness or negligent act which directly contributed to her death, they must find for the defendant. In passing upon this question of contributory negligence the jury should take into consideration the sex, age, size and consequent want of activity of deceased, and all other circumstances in the case. And if the jury believe that it was negligent or reckless in a person such as deceased is proved to have been in these particulars to attempt to step or jump from the train in question while in motion, they should find for defendant. 4. If the jury believe from the evidence that the deceased at the time the train started to leave the depot was in her seat inside the car, and that while the cars were in motion she left her seat and attempted to pass to the depot platform, they will find for defendant. 5. If the jury believe from the evidence that deceased was inside defendant's car at the time the train started to leave the depot, and that while the train was in motion she left the car and attempted to pass to the depot platform, they will find for the defendant.

The instructions given by the court fairly presented the law governing the case and are justified by the rulings of this court in the cases of *Doss v. R. R. Co.*, 59 Mo. 37; *Straus v. Railroad*, 75 Mo. 190; *Nelson v. A. & P. R. R. Co.*, 68 Mo. 595; *Price v. Railroad Co.*, 72 Mo. 418. It is insisted by counsel that the second instruction given for plaintiff is erroneous in requiring of defendant a higher degree of care and vigilance with reference to passengers than the law imposes, in declaring that defendant was bound to exercise the *strictest* vigilance in carrying the deceased to her destination and to set her down safely; and that for want of care in so doing, that is for

want of the strictest vigilance, defendant was liable. In the case of *Higgins v. H. & St. Joe. R. R. Co.*, 36 Mo. 418, the degree of care required is described as being "the utmost degree of care and diligence." In Redfield on Carriers, sec. 347, it is said: "While courts, in announcing the rule governing common carriers of persons, have said that they must be held to the utmost degree of care, vigilance, and precaution, it must be understood that the rule does not require such a degree of vigilance as will be wholly inconsistent with the mode of conveyance adopted and render it impracticable. Nor does it require the utmost degree of care which the human mind is capable of imagining. Such a rule would require the expenditure of money and the employment of hands, so as to render it *perfectly* safe, and would prevent all persons of ordinary prudence from engaging in that kind of business. But the rule does require that the highest degree of practicable care and diligence should be adopted that is consistent with the mode of transportation adopted."

In the case of *Kelly v. R. R. Co.*, 70 Mo. 609, the court in speaking on this subject said: "The carrier was bound to exercise the strictest vigilance in conveying passengers to their respective destinations, and in setting them down safely." Had the words "utmost vigilance" been used in the instruction instead of "strictest vigilance" it would not have been (according to the authorities cited by defendant's counsel) subject to the objection made, which in reality amounts to nothing more than a verbal criticism, the word utmost being quite as comprehensive in its scope as the word strictest. Instructions two, four and five were properly refused, because they ignored the following principle stated in the case of *Doss v. Railroad*, 59 Mo. 37: "Whether the attempt of plaintiff to step from the cars when the train was in motion, was, under the circumstances of the case, such negligence as would relieve defendant of all responsibility for accident is a question of fact for the jury."

In place of the second of defendant's instructions refused, the court of its own motion gave the following: "If the jury believe from the evidence that the train made but a momentary stop at the town of Easton, and, that under such circumstances and while the train was in motion, deceased left the car and attempted to pass to the depot platform, they will find for the defendant, unless they further believe that she so acted at the request or by direction of defendant's brakeman; or, unless they further believe from the evidence that Mrs. Waller was injured in attempting to step upon the passenger platform at Easton when the motion of the car from which she alighted was so slow or slight that the act of deceased at that time and place was not careless or imprudent considering the age, sex and state of health of deceased and all the other circumstances of the occurrence."

Objections are, also, urged to this instruction, but inasmuch as the record fails to show that. the action of the court in giving it was excepted to at the time, under repeated rulings of this court, the objections made cannot be considered here. Perceiving no error justifying our interference, the judgment is affirmed with the concurrence of the other judges.